IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Harold Washington, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 9:05-2879-HMH-GCK |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge George C. Kosko, made in accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 of the District of South Carolina.[1] Harold Washington, Jr. ("Washington") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. In his Report and Recommendation, Magistrate Judge Kosko recommends affirming the Commissioner's decision to deny Washington benefits. For the reasons stated below, the court adopts the Magistrate Judge's Report and Recommendation.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ") (R. at 24-39), and summarized as follows. At the time of the hearing before the ALJ, Washington was a forty-sixx-year-old man with a high school education. (Id. at 43.) His past employment includes working as a sanitation worker, laborer, janitor, and kitchen helper/dishwasher. (Id. at 28.) He alleges disability due to pain in his hip, legs, knees, back, and ankle; a heart murmur; and clogged arteries. (Id. at 28.)

On May 27, 2003, Washington filed an application for DIB and SSI. (Id. at 28.) The application was denied initially and on reconsideration. On December 16, 2004, after a hearing on June 3, 2003, the ALJ found that Washington was not disabled. (R. at 24-39.) On August 11, 2005, the Appeals Council denied Washington's request for review. (Id. at 12.) Washington filed the instant action on October 7, 2005.

## II. THE MAGISTRATE JUDGE'S REPORT

Washington contends that the ALJ erred in (1) failing to properly assess Washington's credibility regarding the severity of his symptoms, (2) denying Washington's request for a consult examination, (3) failing to pose a proper hypothetical question to the vocational expert, and (4) failing to discount the vocational expert's testimony based on the cross-examination by Washington's attorney. Further, Washington contends that the Appeals Council erred in failing to explain why medical reports submitted after the ALJ's decision were rejected. The Magistrate Judge found Washington's arguments to be without merit and recommended that the court affirm the Commissioner's decision denying Washington benefits.

### III. Discussion of the Law

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the finding even if the court disagrees with it. See id. However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

#### B. Objections

Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the Magistrate Judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Washington filed objections to the Magistrate Judge's Report and Recommendation. First, Washington objects to the Magistrate Judge's determination that substantial evidence supported the Commissioner's decision that Washington could perform sedentary work. Second, Washington objects to the Magistrate Judge's conclusion that the ALJ posed appropriate hypothetical questions to the vocational expert ("VE"). Third Washington objects to the Magistrate Judge's determination that the ALJ did not err by failing to order a consult examination. Fourth, Washington objects to the Magistrate Judge's determination that no error occurred when the Appeals Council failed to make specific findings concerning additional medical records submitted by Washington on appeal. The court will address each objection in turn.

### 1. Washington's Disability

#### a. Washington's Credibility

Washington first objects to the Magistrate Judge's conclusion that the ALJ properly evaluated Washington's credibility regarding the severity of his symptoms. (Objections 1.) Subjective complaints of pain are evaluated under the test articulated in Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1994). "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Id. at 594. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." Id. (internal quotation marks omitted). The ALJ must "expressly consider the threshold question of whether [Washington] . . . demonstrated by objective medical evidence an impairment capable of causing the degree

4

and type of pain [he] alleges." Id. at 596. Only after a claimant has met the threshold showing of a medical impairment likely to cause pain must "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work . . . be evaluated." Id. at 595. In making these determinations,

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that the "individual's allegations have been considered" or that " the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2 (1996).

Magistrate Judge Kosko found that substantial evidence supports the ALJ's determination that Washington's description of the severity of his symptoms was not supported by objective medical evidence. (R. at 33.) Washington asserts that the objective medical evidence indicated a condition which could have reasonably produced the symptoms he described, and that the ALJ improperly discounted the opinion of his treating physician, Dr. Ann Knight ("Dr. Knight"). (Objections 1-3.) In support of this argument, Washington asserts that the ALJ was required to accept Dr. Knight's opinion that an MRI revealed the cause of Washington's pain. (Objections 2; R. at 190.)

Dr. Knight submitted her opinion in a letter which stated that Washington was in severe pain and included the results from his MRI. (R. at 190.) However, in the same letter, Dr. Knight stated only that Washington "would have difficulty in doing any kind of active work." (Id.) Further, while the ALJ noted the results of Washington's MRI in his decision,

5

the ALJ did not impermissibly require Washington to demonstrate "objective proof of the severity of pain." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). The ALJ properly considered the somewhat conflicting medical records in this case, along with Washington's testimony, and properly found that Washington's description of his symptoms was not credible in light of the objective medical evidence.

As long as the ALJ's decision regarding Washington's credibility was supported by substantial evidence, it must be upheld, and this court will not re-weigh the evidence regarding Washington's symptoms. See Craig, 76 F.3d at 589. The court finds that substantial evidence supported the ALJ's decision to discount Washington's credibility regarding the extent of his symptoms.

First, the ALJ properly considered Dr. Knight's statement in February 2004 that Washington's pain was "somewhat more . . . than expected" (R. at 183), as well as Dr. Mark Kolender's ("Dr. Kolender") opinion in an August 8, 2003, report that Dr. Kolender's examination of Washington was notable for what appeared to be "some overreaction to maneuvers." (Id. at 156.) Dr. Kolender examined Washington at the request of the South Carolina Vocational Rehabilitation Department. (Id. at 153.) In the August 8, 2003, report, Dr. Kolender further noted that Washington displayed minimal effort when performing motions, that he grunted with any manipulation of his lower extremities, and that Dr. Kolender was unable to examine Washington's knee due to his flinching when touched. (Id. at 155.)

Similarly, the ALJ properly weighed Dr. Knight's inconsistent opinions regarding the severity of Washington's condition. "A treating physician's opinion . . . is entitled to

6

controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id.

Dr. Knight's March 12, 2003, report indicates that Washington had not "had any back pain much in a year or so." (R. at 196.) However, in February 2004, Dr. Knight stated that the rather severe pain and limitations she described in her "Lumbar Spine Residual Functional Capacity Questionnaire" ("February 2004 questionnaire") had been present since 1996. (Id. at 187.) Further, in the February 2004 questionnaire, Dr. Knight stated that Washington could rarely lift less than ten pounds and never lift ten pounds, and that Washington could only sit or stand two hours in an eight-hour workday with normal breaks. (Id. at 186-87.) However, in an October 13, 2003, letter, Dr. Knight stated that Washington could lift ten pounds, although not repetitively, and was only precluded from performing "active work." (Id. at 190.) Finally, in the February 2004 questionnaire, Dr. Knight stated that Washington could never stoop or bend. (Id. at 187.) However, in a form titled "Interrogatories to Treating Physician" dated February 19, 2004, Dr. Knight stated that Washington could bend approximately twenty degrees and stoop about forty-five degrees. (R. at 182.) Moreover, Dr. Knight examined Washington on January 13, 2004, and the medical report did not indicate that Washington's condition had worsened from October 13, 2003, so as to justify her change in opinion. (Id. at 189.)

Additionally, Washington's own statements regarding his condition conflicted with Dr. Knight's findings regarding his limitations. For example, while Dr. Knight stated that Washington could only walk less than a block (Id. at 186.), Washington testified that he walked either a block or ten minutes twice a day (Id. at 18). Additionally, while Dr. Knight stated that Washington could only stand for ten minutes at a time, Washington testified that he could stand for fifteen to twenty minutes. (Id. at 53.) The ALJ properly considered the inconsistencies between Dr. Knight's description of Washington's condition and Washington's statements. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (stating that a Commissioner can consider an individual's own description of his limitations when determining a claimant's residual functional capacity).

Dr. Knight's findings regarding Washington's symptoms were not only internally inconsistent, but were also inconsistent with the findings of other physicians. For example, on January 5, 2004, a state agency physician found that Washington could frequently lift ten pounds; sit and/or walk (with normal breaks) for about six hours in an eight-hour workday; stand and/or walk (with normal breaks) for about two hours in an eight-hour workday; and push and pull without limitations. (R. at 170-171.) Additionally, an unidentified primary care provider who examined Washington on June 11, 2001, in connection with a claim for unemployment insurance benefits, stated that Washington could return to work full-time on June 14, 2001. (Id. at 265.)

Because of inconsistencies in Dr. Knight's reports and substantial evidence in the record contradicting Dr. Knight's observations regarding Washington's limitations, the ALJ

was not required to give Dr. Knight's opinion controlling weight. Based on the foregoing, the ALJ properly evaluated Washington's credibility.

### b. Failure to seek medical treatment

Washington objects to the Magistrate Judge's finding that significant gaps in his medical treatment undermined his allegations of disabling pain. (Objections 4.) Washington asserts that Social Security Ruling 96-7p provides that the ALJ draw no inferences about an individual's symptoms from a failure to seek or pursue regular medical treatment. This ruling does not prohibit consideration of the lack of medical treatment, but states that a failure to seek medical treatment can only be considered after "first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. No. 96-7p, 1996 WL 374186, at *7 (1996). The ruling specifically recognizes that a valid explanation includes a finding that "the individual may be unable to afford treatment and may not have access to free or low-cost medical services."

In his objections, Washington asserts that he could only afford to go to the Franklin C. Fetter Family Health Center ("Fetter Clinic") and could not afford to see a specialist. (Objections 4.) Accordingly, because Washington admittedly could afford to seek treatment from the Fetter Clinic, gaps in his treatment were properly considered in evaluating his condition. See Mickles, 29 F.3d at 921.

### c. Opinion of State Agency's Physicians

Washington objects to the Magistrate Judge's finding that the ALJ properly considered the opinion of the state agency physician as an expert opinion. (Objections 4.) This objection

9

is without merit.  "State agency medical . . . consultants and other program physicians . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation.  Therefore, administrative law judges, must consider findings of State agency medical . . . consultants . . . or other program physicians . . . as opinion evidence."  20 C.F.R. § 404.1527(f)(2)(i); 20 C.F.R. 416.927(f)(2)(i).

Pursuant to this regulation, the ALJ appropriately considered the state agency physician's opinion when determining Washington's disability status.  Further, the relative weight the ALJ afforded the assessment of the state agency physician is not a question to be determined by this court.  See Craig, 76 F.3d at 589.

### d.  South Carolina Employment Security Commission Report

Washington objects to the Magistrate Judge's reference to a June 15, 2001, worker's compensation claim.  Washington asserts that this document is actually a South Carolina Employment Security Commission report which was not completed by a doctor, and is undermined by a physician's report dated September 20, 2001.  The document in question is a form containing a primary care provider's statement regarding Washington's ability to work. (R. at 265-66.)  In the report, the provider states that Washington could return to work full-time on June 14, 2001.  (Id.)

While it appears that the form was completed in connection with unemployment insurance benefits rather than a worker's compensation claim, this difference is irrelevant in the instant case.  Further, the issue of whether the report is undermined by a later physician's report involves the re-weighing of conflicting evidence that this court should not undertake. See Craig, 76 F.3d at 589.

### e. Dr. Kolender's opinion

Washington objects to the Magistrate Judge's finding that Dr. Kolender's opinion was properly used as a basis to undermine Washington's testimony regarding his level of pain. (Objections 5.)  As discussed above, it would be inappropriate for this court to determine what weight the ALJ should have afforded Dr. Kolender's opinion.

Washington asserts that the ALJ ignored the fact that Washington was in pain during Dr. Kolender's examination, that Dr. Kolender only examined Washington once, and that Dr. Kolender did not have a copy of Washington's MRI.  (Objections 5.)  These observations merely go to the determination of the weight afforded Dr. Kolender's report relative to Washington's testimony.  See Craig, 76 F.3d at 589.  Further, Dr. Kolender's examination of Washington is a factor that weighs in favor of giving Dr. Kolender's opinion greater weight. 20 C.F.R. § 416.927(d)(1) (2006) ("Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").  Additionally, any claims by Washington that he experienced pain during the examination are undermined by Dr. Kolender's observation that Washington's exam was notable for what appeared to be "some overreaction to maneuvers."  (R. at 156.)  Based on the foregoing, the court finds that the ALJ's determination of Washington's credibility regarding the severity of his symptoms was supported by substantial evidence.

### 2. Vocational Expert

Second, Washington objects to the Magistrate Judge's finding that the hypothetical questions posed by the ALJ to the vocational expert ("VE") were proper.  Washington asserts

11

that the ALJ was required to include all of Washington's physical limitations described in Dr. Knight's reports when posing hypothetical questions to the VE.

Contrary to Washington's argument, the ALJ was not required to include every limitation claimed by Washington in the ALJ's hypothetical questions to the VE. The ALJ is only required to include limitations which the ALJ finds exist. See Mickles v. Shalala, 29 F.3d 918, 929 n.7 (4th Cir. 1994); Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999). While the VE responded that the limitations posed by Washington's attorney were incompatible with available unskilled work (R. at 67-68), the ALJ found that Washington's description of the extent of his limitations was not credible (Id. at 38). As discussed above, this finding was supported by substantial evidence, and the limitations which the ALJ found to exist were included in the hypothetical questions to the VE. (Id. at 64-67.) Therefore, the ALJ posed proper hypothetical questions to the VE.

### 3.  Consult Examination

Third, Washington objects to the Magistrate Judge's finding that it was proper for the ALJ to not request an orthopedic consult examination. While an ALJ has the authority to order a consult examination, one should only be requested if the claimant's medical records are inadequate for the ALJ to determine whether the claimant is disabled. See 20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f). Further, the ALJ has "a certain amount of discretion" in determining whether to request a consultative examination. Singleton v. Barnhart, 399 F. Supp. 2d 686, 690 (D.S.C. 2005).

Washington asserts that the necessity of a consult examination was corroborated by Dr. Kolender's statements in his August 8, 2003, report. (R. at 153.) In that report, Dr.

Kolender stated that Washington's MRI report was "necessary to understand exactly what is going on with [Washington]." (Id. at 156.) Dr. Kolender then stated that "[i]t is very difficult to say what [Washington's] maximum medical improvement would be until this [MRI] is examined, and then he receives [a] specialist's opinion in this regard." (Id.)

Contrary to Washington's assertion, there is no lack of expert opinion in Washington's file. The record in this case contains extensive medical records and opinions by various doctors. (Id. at 29-33.) Additionally, while Dr. Kolender apparently did not have access to it, Washington had an MRI on his back, and the ALJ considered the MRI report in his decision. (Id. at 29.) Further, Dr. Kolender's statement indicating the need for a specialist's opinion concerned the relatively narrow issue of Washington's maximum medical improvement, not Washington's condition when Dr. Kolender examined him.

Washington does not specifically assert what issues would have been resolved by a specialist's opinion or how a specialist's opinion would have clarified the already extensive record in this case. Based on the foregoing, the court finds that the evidence in this case was sufficient to support the ALJ's decision on Washington's claim. Therefore, the Magistrate Judge properly concluded that the ALJ was not required to request a consult examination.

### 4. Medical Records

Finally, Washington objects to the Magistrate Judge's finding that the Appeals Council was not in error for failing to specifically give reasons for rejecting new evidence submitted by Washington. Specifically, Washington submitted two letters written by Dr. Knight to the Appeals Council. The first letter is dated January 19, 2005 ("January 2005 letter"), and the second letter is dated June 23, 2005 ("June 2005 letter"). (R. at 215-16.) Both letters state

13

that Washington's condition had worsened since Dr. Knight examined Washington on February 19, 2004. Additionally, the January 2005 letter states that Washington was unable to "do any lifting of any type or kind." The letters appear to be based on Washington's statements and do not purport to rely on any new diagnostic findings or clinical evidence. While it is clear that the Appeals Council considered these letters in its decision (Id. at 12, 15), Washington contends that the Appeals Council was in error for not giving specific reasons for rejecting the letters (Objections 7).

The Magistrate Judge concluded that the Appeals Council was not required to give specific reasons for rejecting the letters because the letters presented no new evidence and were merely duplicative of Dr. Knight's previous statements. Washington contends that the letters constitute new evidence. However, in a report dated August 23, 2002, Dr. Knight stated that Washington "can't lift." (R. at 468.) Further, in a letter dated October 13, 2003, Dr. Knight stated that Washington "would have difficulty in doing any kind of active work." (Id. at 190.) Additionally, on February 19, 2004, Dr. Knight completed a "Lumbar Spine Residual Functional Capacity Questionnaire" and stated that Washington's pain would "constantly" "interfere with [Washington's] attention and concentration needed to perform even simple work tasks." (Id. at 185.) In the same questionnaire, Dr. Knight also stated that Washington could rarely lift less than ten pounds and could never lift anything more than ten pounds. (Id. at 187.) Given these previous statements by Dr. Knight, her statements in the letters submitted to the Appeals Council did not constitute new or material evidence, but instead reiterated her position that Washington was disabled.

14

Additionally, Dr. Knight's opinion in the January 2005 letter and the June 2005 letter that Washington's condition had worsened was not supported by any new diagnostic or clinical findings which would constitute new, material evidence. In fact, it is unclear from the letters what formed the basis for Dr. Knight's conclusion that Washington's condition had worsened. Therefore, because these letters presented no new evidence and because duplicative evidence had been considered by the ALJ, the Appeals Council was not required to explicitly explain why the letters were not persuasive evidence of Washington's disability. See Jordan v. Califano, 582 F.2d 1333, 1335-36 (4th Cir. 1978) (holding that an appeals council should have explicitly explained why new evidence was not considered persuasive when the new evidence "sufficiently supported the existence of a qualifying disability"); see also Harmon v. Apfel, 103 F. Supp. 2d 869, 874 (D.S.C. 2000) (stating that the reason new evidence must be explicitly addressed by the Appeals Council is because the ALJ has not had the benefit of considering the new evidence).

Further, because Dr. Knight's letters were merely duplicative, the Appeals Council was not required to even consider the letters. "The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (internal quotation marks omitted). Evidence is new if it is not duplicative or cumulative. Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. Further, to the extent any evidence shows that Washington established disability for the time period after the ALJ's decision, or that

15

there was a deterioration after the relevant period, Washington presents, at most, grounds for filing a new application. See 20 C.F.R. § 404.976(b)(1) (2005); Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993).

As discussed above, Dr. Knight's letters presented no new evidence. Because the letters merely reiterated Dr. Knight's previous position and contained no new clinical findings, they also did not constitute material evidence which may have changed the outcome of the decision. Further, both letters were written after the ALJ's decision, and neither letter directly addresses Washington's condition prior to the ALJ's decision. See Wilkins, 953 F.2d at 95-96. Therefore, the Appeals Council was not required to consider the letters, and its failure to provide specific reasons for rejecting them was proper. For the reasons discussed above, the court adopts the Magistrate Judge's Report and Recommendation and affirms the decision of the Commissioner.

Therefore, it is

**ORDERED** that the decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

                                               s/Henry M. Herlong, Jr.
                                               United States District Judge

Greenville, SC
November 28, 2006